PEOPLE ex rel. MAXWELL KATZ, Relator, *v.* HERBERT S. SISSON, Commissioner of Excise of the State of New York, Respondent.

(Supreme Court, Westchester Special Term, January, 1918.)

Liquor Tax Law — suspension of operation of liquor tax certificate — constitutional law — statutes — motion for stay when denied — state commissioner of excise — certiorari.

An order of the state commissioner of excise made under and pursuant to chapter 521 of the Laws of 1917 suspending the operation of the liquor tax certificate issued to relator may be reviewed by certiorari.

The constitutionality of said statute, because of its very great importance as a war measure designed to aid the federal government, ought not to be determined on motion at Special Term.

Where it is undisputed that at the time of the granting of said order the conditions in the city where relator's premises are located were such that the order suspending all the liquor tax certificates in said city was justified, a motion for a stay of the order will be denied.

While relator and the other holders of liquor tax certifi- cates should be relieved from the further operation of said order if the conditions of the city have materially changed and there is no longer a need that the order be enforced, the

court is without power to afford relief until after an application has been made to the state commissioner of excise for a revocation or rescission of the order because of the changed conditions.

APPLICATION for a writ of certiorari.

Cellar & Kraushaar, for relator.

H. D. Sanders, for respondent.

TOMPKINS, J. Application is made for a review by the Appellate Division of the Supreme Court of an order dated December 14, 1917, made by the state commissioner of excise suspending the operation of the liquor tax certificate issued to the relator for premises No. 262 North avenue in the city of New Rochelle, N. Y., which order was made under and pursuant to chapter 521 of the Laws of 1917, which reads as follows:

" Section 1. The excise commissioner, with the approval of the governor, whenever in his opinion the public peace, safety and good order may require, and on the application of the mayor of a city or the town board of a town, may, during the present war, suspend the privileges under liquor tax certificates heretofore or hereafter issued and prohibit the sale of alcoholic beverages for such period or periods and during such days or parts of days in such part of such city or town as he may deem proper in proximity to camps or barracks of state or federal troops or of munition factories or plants or of places of manufacture or production of material used in the manufacture of munitions, and order the closing of places within such limits in which the sale of such beverages has been heretofore or may be hereafter authorized by law. He may also prescribe that the sale of alcoholic beverages, if any, within such limits, shall be exclusively to be drunk upon the premises.

" § 2. This act shall take effect immediately."

The relator also asks this court to make an order staying the enforcement of the respondent's said order pending the determination by the Appellate Division of the certiorari proceeding.

I think the action of the respondent may properly be reviewed by certiorari, and for that purpose the writ asked for will be allowed; but a stay of proceedings, which is also asked for on this motion, must be denied for the following reasons:

The relator attacks the constitutionality of the above quoted statute under which the respondent's order was made, upon several grounds, all of which I think have been disposed of· by the Appellate Division of this department adversely to the relator's claim (*People ex rel. Doscher* v. *Sisson,* not yet reported) except that in that case the court refrained from expressing its opinion as to the effect of the commissioner's order upon a liquor tax certificate which had not expired when the order took effect.  That reservation was made because the question was not involved in that proceeding which was instituted to compel the issuing of a liquor tax certificate for the year beginning October 1, 1917, which was subsequent to the making of the order which was in review in that case.  In the case at bar, the relator's certificate was issued to him prior to the making of the order now complained of, so that the question of the constitutionality of the act as it affects an existing liquor tax certificate is directly involved.

I think the court at Special Term should not on a motion of this character undertake to declare a statute of such general importance to be unconstitutional.  It is a war measure designed to aid the federal government in making adequate preparation for the successful prosecution of the war.  Individual and local interests must be subordinated to the welfare of the nation and the safeguarding and efficiency of all its instru-

mentalities for the stupendous and vital task that lies before it. It is an emergency measure made necessary by the exigencies of the war, and, it seems to me, is well. within the police power of the state; but I am not on this motion undertaking to pass upon the constitutionality of the act. I am merely emphasizing the fact that because of its very great importance as a war measure the court at Special Term ought not to undertake to say that it offends the fundamental law.

It appears without dispute that when the order complained of was made by the respondent conditions were such in the city of New Rochelle that the respondent was justified in making the said order suspending all liquor tax certificates in that city. The city at that time was filled with men seeking enlistment in the regular army at Fort Slocum. The facilities at the fort were wholly inadequate to accommodate and take care of the thousands of young men who were seeking opportunities for enlistment. The affidavit submitted on behalf of the relator on this motion says: '' That as a matter of common knowledge, pursuant to the order of the Provost Marshal General of the United States in charge of the operation of the so-called Selective Draft Law's administration, a time limit was set for voluntary enlistment in the United States Army of those who were subject to the Selective Draft, otherwise; and that said time limit expired on the fifteenth day of December, 1917; that as a result of said announcement widely published throughout the United States, a large number of young men from various parts of the United States immediately entrained and arrived at New Rochelle, which city is the railway station for the military reservation of Fort Slocum, used as a receiving station for voluntary enlistments and for their distribution to various other military posts; and that on or about the tenth

day of December, 1917, the said enlistments began to arrive, as stated, in such numbers that the facilities for said Fort Slocum became overtaxed, and the receiving officers were totally unable to care for all who came for this purpose; that thereafter, and up until and including the 14th day of December, 1917, the said influx of recruits became greater and greater; that all of said men were in civilian clothing, and had not yet been accepted by the authorities at Fort Slocum, for the reasons herein stated; and that, as a consequence, according to deponent's observation and knowledge, and that of other citizens with whom deponent talked, it was estimated that a number of recruits for the army not yet assimilated at the Fort on said December 14th approximated between seven and eight thousand.

" Deponent further says: That as a result of this unprecedented congestion caused by these arrivals, that all of the churches, clubhouses, public schools, Y. M. C. A., Knights of Columbus halls, and many private residences were thrown open to care for these arrivals; that from the 13th of December and subsequently, the weather was inclement and a situation resulted at or about this time which taxed the facilities of the entire city to adequately care for these men; that others were sent to neighboring cities and towns to be cared for;

" Deponent further says: That as a result of the exigency thus created, the then Mayor of New Rochelle, Edward Stetson Griffing, believing it incumbent upon him to preserve the public peace, public safety and welfare, in view of this extraordinary situation caused by the congestion, and not otherwise; and because of the large number of strangers seeking enlistment, many of whom were disappointed at their failure to be promptly received at the Fort, made an application, as deponent is informed by said mayor, over the long

distance telephone to the Governor of the State of New York at Albany, setting forth, in verbal terms, the nature of the conditions existing in the city of New Rochelle on the 14th day of December, 1917; and that the Mayor requested the Governor to approve an application to the State Commissioner of Excise, to suspend, temporarily, the provisions of the various liquor tax certificates issued to the various liquor dealers in New Rochelle.''

It is obvious, therefore, that the respondent's order, when made, was justifiable. Whether it should now be continued in force, presents another question. The claim on the part of the relator is that conditions have materially changed, and that the city of New Rochelle has now returned to its normal state, and that there is not now any good reason for the continuance of the order, and that it ought to be rescinded. While individual and local interests must give way to the greater needs of the state and nation, still individual rights should not be made to suffer and injury and damage ought not to be inflicted upon local interests and business enterprises under the guise and pretext of a war measure, where it is unnecessary.

The hotel and saloon keepers of the city of New Rochelle have hundreds of thousands of dollars invested in their business enterprises, and real estate owners have large property interests that are dependent upon the right of the holders of liquor tax certificates to exercise their rights thereunder, and traffic in the sale of liquors, and these rights and interests ought not to be unnecessarily jeopardized, and the law ought to give them protection in the exercise of their rights under the liquor tax certificates for which they have paid the state, unless the exercise of such rights will materially interfere with the war work of the nation. If the city of New Rochelle has been restored to its normal condition, and there is no longer

need for the enforcement of this order, it ought to be promptly rescinded, and I think application for such relief should be made in the first instance to the state commissioner of excise. No such application has been made, so far as appears from the papers on this motion. It does not even appear that a formal application has been made to the new mayor for a recommendation to the state commissioner of excise on the subject, and I think the relator's remedy, and that of the many others who are situated as he is, is by application to the state commissioner of excise for a rescission of the order, supported by evidence showing that the need no longer exists for the enforcement of the order in question.

The application now pending before me is for a stay of the order upon the ground that it was illegally and improperly made. Upon that question, I find against the relator, because I think the undisputed facts show that when the order was made the respondent wisely exercised the discretion vested in him by the law; but if the conditions of the city have materially changed, and there is no longer a real need for the enforcement of the order, then I am decidedly of the opinion that the relator and the other holders of liquor tax certificates should be relieved from its further operation; but I think the court is without power to help them until after an application has been made to the state commissioner for a revocation or rescission of the order, because of the changed conditions. It is a matter which, in the first instance, is wholly within the power of the state commissioner, and he should either act upon an application for a rescission of the order, or refuse to act, before the court can entertain an application with respect thereto. Motion for a writ of certiorari granted. Motion for a stay denied.

Ordered accordingly.